ABIGAIL ROSEN (NY Bar No. 4397048)
THOMAS W. PEIRCE (NJ Bar No. 005122001)
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
Email: RosenAb@sec.gov
Telephone: (212) 336-0473 (Rosen)

LOCAL COUNSEL:
JASMINE STARR (Cal. Bar. No. 259473)
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
Email: StarrJa@sec.gov
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK IGWEALOR, PATIENCE OGBOZOR, ALPHARIDGE CAPITAL, LLC, AMERICAN COMMUNITY CAPITAL, LP, GIVEMEPOWER, INC., KID CASTLE EDUCATIONAL CORPORATION, LOS ANGELES COMMUNITY CAPITAL, and VIDEO RIVER NETWORKS, INC.,<br><br>Defendants. | Case No.  2:24-cv-09941<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Securities and Exchange Commission ("Commission" or "SEC"), for its Complaint against Defendants Frank Igwealor ("Igwealor"), Patience Ogbozor ("Ogbozor"), Alpharidge Capital, LLC ("Alpharidge"), American Community Capital, LP ("American Community Capital"), GiveMePower, Inc. ("GiveMePower"), Kid Castle Educational Corporation ("Kid Castle"), Los Angeles Community Capital ("LA Community Capital"), and Video River Networks, Inc. ("Video River Networks"), (collectively, "the Defendants"), alleges as follows:

## SUMMARY

1.    From at least June 2021 to the present Defendant Igwealor engaged in a scheme to 1) obtain control of publicly-traded penny stock companies; 2) misappropriate funds from one such company for the purchase of a home; and 3) enrich himself through unlawful sales of stock in some of those companies. Igwealor also made materially false statements to his broker and in filings with the Commission, in furtherance of these unlawful acts. Each of the remaining Defendants participated in certain of these acts.

2.    In November 2021, Igwealor and Defendant Ogbozor, Igwealor's spouse, misappropriated over $2.2 million from Defendant Alpharidge, a subsidiary of Defendant GiveMePower, a publicly-traded company that they controlled. They used the $2.2 million to purchase their personal residence in Playa del Rey, California and then papered the transaction by having Defendant Alpharidge issue them a $2.2 million mortgage. Under the terms of the mortgage, no payments of principal or interest were due until 2031. In violation of federal securities laws, the mortgage was not disclosed in Defendant GiveMePower's annual report filed with the Commission.

3.    Igwealor then orchestrated sham transactions involving Defendants Kid Castle and Video River Networks, two other publicly-traded companies under his control, and Defendant LA Community Capital, a non-public entity controlled by Igwealor, to obfuscate the original misappropriation, and avoid repayment.

4.      In addition, from at least July 2021 through February 2022, Igwealor sold hundreds of millions of shares of three penny stock issuers he controlled, far in excess of volume limitations for stock sales by affiliates under federal securities laws. Igwealor sold the shares through accounts in his name and in the names of Defendants Alpharidge and American Community Capital, private companies he controlled, all through accounts which he controlled. In connection with the unlawful sale of stock of one issuer, Igwealor made fraudulent misrepresentations to his broker-dealer falsely disclaiming his control of that issuer.

## VIOLATIONS

5.      By virtue of the foregoing conduct and as alleged further herein, Defendant Igwealor violated: Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)] and Sections 17(a)(1), 17(a)(2) and 17(a)(3) [15 U.S.C. §§ 77q(a)(1), 77q(a)(2) and 77q(a)(3)] of the Securities Act of 1933 ("Securities Act"); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a), (b) and (c) thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a), 10b-5(b) and 10b-5 (c) thereunder]; and aided and abetted violations of Exchange Act Sections 13(a) and 13(k) and Rules 12b-20 and 13a-1 thereunder [15 U.S.C. §§ 78m(a) and 15 U.S.C. § 78m(k) and 17 C.F.R. § 240.12b-20 and 17 C.F.R. § 240.13a-1 thereunder].

6.      By virtue of the foregoing conduct and as alleged further herein, Defendant Ogbozor violated Securities Act Section 17(a)(3) [15 U.S.C. §§ 77q(a)(3)] and aided and abetted violations of Exchange Act Section 13(k) [15 U.S.C. § 78m(k)].

7.      By virtue of the foregoing conduct and as alleged further herein, Defendant Alpharidge violated Securities Act Sections 5(a) and 5(c)[15 U.S.C. §§ 77e(a) and 77e(c)] and Exchange Act Section 10(b) and Rules 10b-5(a), and (c) thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a) and 10b-5 (c)].

8.      By virtue of the foregoing conduct and as alleged further herein, Defendant American Community Capital violated Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)].

9.      By virtue of the foregoing conduct and as alleged further herein, Defendant GiveMePower violated Securities Act Sections 17(a)(1) and 17(a)(3) [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)] and Exchange Act Sections 10(b), 13(a) and 13(k) and Rules 10b-5, 12b-20 and 13a-1 thereunder [15 U.S.C. § 78j(b), 78m(a) and 78(m)(k) and 17 C.F.R. §§ 240.10b-5(a),(b) and (c) and 13a-1 thereunder].

10.     By virtue of the foregoing conduct and as alleged further herein, Defendants Kid Castle and Video River Networks violated Exchange Act Sections 10(b), 13(a) and 13(k) and Rules 10b-5, 12b-20 and 13a-1 thereunder [15 U.S.C. § 78j(b), 78m(a) and 78(m)(k) and 17 C.F.R. §§ 240.10b-5(a),(b) and (c) and 13a-1 thereunder].

11.     By virtue of the foregoing conduct and as alleged further herein, Defendant LA Community Capital violated Exchange Act Section 10(b) and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a) and (c) thereunder].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

12.     The Commission brings this action pursuant to the authority conferred upon it by Securities Act Section 20(b) [15 U.S.C. § 77t(b)] and Exchange Act Sections 21(d)(1) and 21(d)(5) [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)].

13.     The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws and rules that this Complaint alleges they have violated; (b) ordering Defendants Igwealor, Ogbozor, Alpharidge, American Community Capital and LA Community Capital to each disgorge all ill-gotten gains they each received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering

Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) prohibiting Igwealor and Ogbozor from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; (e) prohibiting Igwealor, Alpharidge and American Community Capital from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (f) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

15.    Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

16.    Venue lies in the Central District of California (the "District") under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendants transacted business in the District, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the District. Among other things, Defendants Igwealor and Ogbozor purchased real property in the District using proceeds from their scheme.

## DEFENDANTS

17.    Igwealor, age 53, resides in Playa Del Rey, California. He is an active member of the California bar since March 2021; a California-licensed CPA; and an investment adviser with, and President and CEO of, Goldstein Franklin, Inc.

4

("Goldstein Franklin"), an investment adviser registered with California. He is the control person for multiple issuers whose common stock is quoted and traded on OTC Link, an inter-dealer quotation system operated by OTC Markets Group, Inc. that allows broker-dealers to buy and sell over-the-counter securities ("OTC Issuers").

18.     Ogbozor, age 39, resides in Playa Del Rey, California. She is married to Igwealor. At relevant times, she was a director of at least three OTC Issuers controlled by Igwealor.

19.     Alpharidge is a California limited liability company headquartered in Torrance, California. From about December 31, 2020 through December 30, 2021, it was a subsidiary of GiveMePower. At that point, it became a direct subsidiary of Kid Castle and an indirect subsidiary of Video River Networks. On January 12, 2024, Kid Castle sold Alpharidge to American Community Capital.  Alpharidge acquires OTC Issuers, typically by obtaining custodianship under Nevada state law, and trades in the stock of companies in Igwealor's portfolio, including those acquired through the Nevada custodianship process. Igwealor was the CEO and sole employee of Alpharidge at all relevant times.

20.     American Community Capital is a limited partnership headquartered in Los Angeles, California. LA Community Capital and Goldstein Franklin are its General Partners.

21.     GiveMePower is a Nevada-registered corporation headquartered in Torrance, California. Its common stock is quoted and traded on OTC Link under the ticker symbol GMPW, and registered with the Commission pursuant to Section 12(g) of the Exchange Act. Igwealor is the company's CEO and CFO and Ogbozor is a director. GiveMePower was a subsidiary of Kid Castle until December 30, 2021 when GiveMePower sold its subsidiary Alpharidge to Kid Castle in exchange for Kid Castle's ownership stake in GiveMePower.

22.     Kid Castle is a Delaware-registered corporation headquartered in Torrance, California. Its common stock is quoted and traded on OTC Link under the ticker symbol KDCE, and registered with the Commission pursuant to Section 12(g) of the Exchange Act. Igwealor is the company's Chairman, a director, CEO and CFO. Ogbozor was a director until at least December 2023.

23.     LA Community Capital is a California-registered corporation headquartered in Los Angeles, California. Igwealor is the CEO, Secretary, CFO, and agent for the service of process. Its 2021 and 2022 tax returns show annual revenue of $1,000 and that it claims Public Charity Status.

24.     Video River Networks is a Nevada-registered corporation headquartered in Torrance, California. Its common stock is quoted and traded on OTC Link under the ticker symbol NIHK, registered with the Commission pursuant to Section 12(g) of the Exchange Act. Igwealor is the company's President, CEO and CFO. Ogbozor was a director until at least December 2023.

## FACTS

**The Misappropriation of $2.2 Million by Igwealor and Ogbozor for the Purchase of Their Home**

25.     In about November 2021, Igwealor and Ogbozor purchased a home in Playa del Rey, California.

26.     Instead of obtaining a mortgage from a financial institution, Igwealor and Ogbozor took just over $2.2 million from Alpharidge, a company that Igwealor controlled.

27.     At the time that Igwealor and Ogbozor took these funds, Alpharidge was a wholly-owned subsidiary of GiveMePower, a public company.

28.     In addition, Igwealor was the CEO and Ogbozor was a director of GiveMePower.

29.     Specifically, Igwealor and Ogbozor both signed a deed of trust, dated November 22, 2021, which conveyed the home to them and reflected that Alpharidge was the holder of a $2.2 million mortgage on the property.

30.     The next day, Igwealor wired just over $2.2 million from Alpharidge to an escrow agent for the purchase of the property.

31.     Igwealor was the sole signatory for Alpharidge's bank accounts, which immediately prior to the November 23, 2021 wire for the purchase of Igwealor's and Ogbozor's home, held about $4.3 million.

32.     That same day, Igwealor and Ogbozor signed a document which memorialized the $2.2 million mortgage from Alpharidge (the "Alpharidge Mortgage Note").

33.     The Alpharidge Mortgage Note set a 5% annual interest rate and did not require payment of principal or interest until the maturity date of November 23, 2031.

34.     Igwealor and Ogbozor have not made any payments on the Alpharidge Mortgage Note.

**Igwealor's Concealment of the Alpharidge Mortgage Note and Transfer of the Note from GiveMePower to Kid Castle**

35.     On December 30, 2021, GiveMePower sold Alpharidge (including the Alpharidge Mortgage Note) to Kid Castle, a subsidiary of Video River Networks. All of these entities were at all relevant times controlled by Igwealor.

36.     The sale of Alpharidge was a cashless transaction whereby Kid Castle gave its 87% controlling interest in GiveMePower to GiveMePower in exchange for Alpharidge.

37.     On April 15, 2022, GiveMePower filed its annual report on Form 10-K with the Commission (the "2021 GiveMePower Form 10-K"). Igwealor signed the 2021 GiveMePower Form 10-K as GiveMePower's President, CEO, CFO, Principal Executive Officer, Treasurer, Principal Accounting Officer, Principal Financial Officer, Director and Secretary. Ogbozor signed as a Director.

7

38.     Igwealor and Ogbozor also signed certifications pursuant to Section 302(A) of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Certifications"), which among other things, certified that they had "reviewed this annual report on Form 10-K of GiveMePower Corporation" and that the report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

39.     The 2021 GiveMePower Form 10-K represented that the company's financial statements had been prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), that GiveMePower "did not make any share award to the entities and persons in transactions that would be classified as related parties' transactions," and, after listing three related party transactions not including the mortgage, indicated that "[t]here have been no other related party transactions, or any other transactions or relationships required to be disclosed pursuant to Item 404 of Regulation S-K."

40.     According to GAAP (Accounting Standards Codification 850), a related party is a person or entity that is related to the reporting entity. This includes individuals with control, joint control, or significant influence over the entity; close family members of those individuals; and entities under common control or joint control.  The GiveMePower Form 10-K listed Frank Igwealor as a related party.

41.     Item 404(a) generally requires a description of transactions since the beginning of the registrant's last fiscal year in excess of $120,000 in which the registrant was a participant and any "related person had or will have a direct or indirect material interest."

42.     Notwithstanding the representations in the 2021 GiveMePower Form 10-K, that the financial statements had been prepared in accordance with GAAP and Item 404 of Regulation S-K, the filing did not mention the mortgage given to Igwealor and Ogbozor pursuant to the Alpharidge Mortgage Note, nor did it mention

the sale of the Alpharidge Mortgage Note in connection with its description of the sale of Alpharidge, which were related party transactions under GAAP and Item 404 of Regulation S-K.

43.    The granting of the mortgage under the Alpharidge Mortgage Note and the sale of the Alpharidge Mortgage Note were related party transactions because, during the relevant time-period, Alpharidge, GiveMePower, and the mortgagee were all under Igwealor's control.

44.    The consolidated balance sheet for 2021, contained in the 2021 GiveMePower Form 10-K, reported assets of $647,575 as of December 31, 2021, after the issuance of the mortgage, indicating that the approximate $2.2 million taken by Igwealor and Ogbozor had been a material portion of the company's overall assets.

45.    The failure to disclose the Alpharidge Mortgage Note was also a material omission by GiveMePower because a reasonable investor would want to know that the company's officers had received a substantial and illegal personal loan from the issuer.

46.    Igwealor knew, recklessly disregarded, or should have known, that the Alpharidge Mortgage Note and the sale of the note were required disclosures, at the time that he signed and filed the 2021 GiveMePower Form 10-K.

**Igwealor's Transfer of the Alpharidge Mortgage Note from GiveMePower to LA Community Capital**

47.    A year after the transfer of Alpharidge, including the Alpharidge Mortgage Note, from GiveMePower to Kid Castle, Igwealor caused Alpharidge to transfer the Alpharidge Mortgage Note to LA Community Capital, a private non-profit corporation controlled by Igwealor, in a purported swap transaction.

48.    Igwealor signed and executed an agreement transferring the Alpharidge Mortgage Note and nine other notes to LA Community Capital for "long term debt owed to" LA Community Capital and its affiliates (the "Purported LACC Debt")

(collectively, the "Swap Agreement") on behalf of both Alpharidge and LA
Community Capital.

49.    According to the Swap Agreement, as of December 30, 2022, the
Alpharidge Mortgage Note had a "face amount of $2.2 million and accrued interest
total of $0.11 million" and the additional notes had a "total face value of $3.5
million."

50.    The Purported LACC Debt was a fiction. The Swap Agreement provides
no information as to the source or amount of the Purported LACC Debt. LA
Community Capital's tax filings for 2021 and 2022 reported no debt owed to it.
Moreover, Igwealor provided the Commission with no evidence of the Purported
LACC Debt in response to a subpoena calling for such documents.

51.    On April 18, 2023, Kid Castle and Video River Networks each filed with
the Commission an annual report on Form 10-K for the year ending December 31,
2022 (the "2022 Kid Castle Form 10-K" and "2022 Video River Networks Form 10-
K," respectively). Igwealor signed both filings and the Sarbanes-Oxley Certifications
which were attached to the filings.

52.    The 2022 Kid Castle Form 10-K and the 2022 Video River Networks
Form 10-K disclosed the Swap Agreement but, like the Swap Agreement itself, did
not disclose any meaningful detail about the Purported LACC Debt.

53.    Thus, the representations in the 2022 Kid Castle Form 10-K and 2022
Video River Networks Form 10-K that the Alpharidge Mortgage Note and nine other
notes had been swapped for debt were materially false and misleading.

54.    These statements were materially false and misleading because LA
Community Capital did not have long-term debt to exchange in connection with the
Swap Agreement. As a result, Kid Castle and Video River Networks did not receive
anything of value in exchange for the notes.

55.    These statements were also materially misleading because they failed to
disclose that the purpose of the Swap Agreement was to allow Igwealor and Ogbozor

10

to avoid repaying the mortgage. By transferring the Alpharidge Mortgage Note to LA Community Capital, Igwealor, in effect, made himself both mortgagee and mortgagor.

56.     A reasonable investor of Kid Castle or Video River Networks would have wanted to know that an asset of $2.2 million was given away in a sham transaction in exchange for nothing of value, for the benefit of an officer and director of the company.

57.     Igwealor knew, recklessly disregarded, or should have known, that disclosures about the Swap Agreement in the 2022 Kid Castle Form 10-K and the 2022 Video River Networks Form 10-K were false and misleading.

**The Illegal Stock Sales by Igwealor, Alpharidge and American Community Capital**

58.     Between July 16, 2021 and February 28, 2022, Igwealor, Alpharidge, and American Community Capital (together, the "Section 5 Defendants") sold hundreds of millions of shares of three OTC Issuers controlled by Igwealor: International Star, Inc. ("International Star"), JPX Global, Inc. ("JPX Global") and Tonner-One World Holdings, Inc. ("Tonner") (collectively, the "Section 5 Issuers").

59.     The Section 5 Defendants' total profits from these illegal stock sales was approximately $6 million.

60.     Under Securities Act Section 5 [15 U.S.C. § 77e] and Rule 144 [17 C.F.R. §240.144], in the absence of an exemption, affiliates of an issuer are subject to limitations on the amount of shares of that issuer that they may sell. There was no Section 5 exemption applicable to the Section 5 Defendants.

61.     For securities not traded on a national securities exchange, Rule 144(e) sets volume limitations for stock sales by affiliates, in which the amount of securities sold by an affiliate during a three-month period may not exceed 1% of the shares outstanding. These limitations remain applicable for 90 days after the person is no longer an affiliate.

62.     The securities of the Section 5 Issuers were not traded on a national securities exchange.

63.     Rule 144(a)(1) defines an "affiliate of an issuer" as a person that "directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."

64.     Rule 144(e)(3) provides that for purposes of applying the volume limitation, "[w]hen two or more affiliates or other persons agree to act in concert for the purpose of selling securities of an issuer, all securities of the same class sold for the account of all such persons during any three-month period shall be aggregated . . ."

65.     The Section 5 Defendants were affiliates of each other and were also affiliates of the Section 5 Issuers throughout the relevant period because the issuers, Alpharidge and American Community Capital were under the common control of Igwealor, and Igwealor controlled each of the Section 5 Issuers throughout the relevant time.

**Igwealor's Control of the Section 5 Issuers**

International Star

66.     Igwealor controlled International Star from June 3, 2021 until at least July 20, 2021.

67.     On June 3, 2021, pursuant to a motion filed by Alpharidge, the District Court of Clark County, Nevada appointed Alpharidge as custodian of International Star, Inc.

68.     Igwealor also controlled International Star's preferred shares, through Community Economic Development, another entity controlled by Igwealor. As the holder of the issuer's preferred shares, Community Economic Development controlled the company, including the appointment of directors, and held 60% voting rights over all classes of stock.

69.    Igwealor's control of International Star continued until at least July 20, 2021, when, according to International Star's annual disclosure statement for the year ending December 31, 2021, Community Economic Development sold its preferred shares to an unrelated third party.

70.    The limitations on the Section 5 Defendants' sales of International Star stock extended to October 18, 2021, 90 days after the sale of the preferred shares.

JPX Global

71.    Igwealor controlled JPX Global from July 7, 2021 through the present.

72.    On July 7, 2021, pursuant to a motion filed by Alpharidge, the District Court of Clark County, Nevada appointed Alpharidge as custodian of JPX Global.

73.    The same day, Alpharidge sold 100% of JPX Global's Series A preferred shares to Igwealor's entity Community Economic Development which gave it majority control of JPX Global.

74.    As of JPX Global's most recent quarterly disclosure report, published on August 13, 2023, Igwealor is JPX Global's CFO.

Tonner

75.    Igwealor controlled Tonner from at least September 6, 2021 through February 2022 through his private purchase of control shares from the prior owners. During that time, Igwealor held himself out to the transfer agent as an officer of Tonner, including as Tonner's controller and principal accounting officer, and gave instructions to the transfer agent. In addition for a portion of this period, he held more than ten percent of Tonner's outstanding shares.

**The Section 5 Defendants' Illegal Stock Sales**

76.    The Section 5 Defendants' sales of common stock of each of International Star, JPX Global and Tonner were sold through accounts controlled by Igwealor, in his own name, and in the names of Alpharidge and American Community Capital.

77.     These sales repeatedly exceeded Rule 144's limitation of one percent of
the issuer's outstanding shares over a three-month period.

78.     Between July 16 and October 18, 2021, when the Section 5 Defendants
were subject to restrictions on sales of International Star stock, they collectively sold
over 35 million shares of International Star in excess of the volume limitation.

79.     During this period, their combined stock sales exceeded 1% of
International Star's outstanding shares of common stock on 18 days.

80.     The Section 5 Defendants' profit from the unlawful sale of International
Star shares was at least $300,000.

81.     Between August 11, 2021 and November 9, 2021, when the Section 5
Defendants were subject to restrictions on sales of JPX Global, they collectively sold
more than 63 million shares of JPX Global in excess of the volume limitation.

82.     Between August 11, 2021 and November 9, 2021, these sales exceeded
1% of JPX Global's outstanding shares of common stock on 34 days.

83.     The Section 5 Defendants' profit from the unlawful sales of JPX Global
shares was approximately $1.5 million.

84.     Between September 22, 2021 and February 28, 2022, when the Section 5
Defendants were subject to restrictions on sales of Tonner, they collectively sold
more than 565 million Tonner shares in excess of the volume limitation.

85.     During this period, their combined stock sales exceeded 1% of Tonner's
outstanding shares of common stock on 35 days.

86.     The Section 5 Defendants' profit from the unlawful sale of Tonner shares
was approximately $4.2 million.

**Igwealor's Lie to His Brokerage Firm to Circumvent Trading Restrictions
on His Sale of  International Star Shares**

87.     In connection with the Section 5 Defendants' sales of International Star
stock, Igwealor gave false information to the compliance department of the broker-
dealer where he maintained a brokerage account under the name of American

14

Community Capital, in order to circumvent the broker-dealer's internal controls
regarding the illegal sales of stock by affiliates.

88.     Specifically, on June 7, 2021, the broker-dealer sent Igwealor a message
stating:

> "Your holdings and/or recent trading activity in [International Star] in your
> [brokerage] account indicate that you may be an 'affiliate' of this security as
> defined in Rule 405 under the Securities Act of 1933 or applicable securities
> laws and regulations. If you are an affiliate, there are significant trading
> restrictions to be in compliance with the rules . . . [the Brokerage Firm] has
> therefore restricted you from further trading in [International Star.] If you wish
> to trade this security and would like to have this trading restriction on this
> security temporarily removed, please respond to this customer service ticket
> with your reasoning."

89.     Two days later, Igwealor responded to the message stating as follows:
"I'm writing to request for the removal of the current trading restriction on
[International Star] on the notion that I might be an affiliate of [International
Star]. My Name is Frank I Igwealor. I'm the principal of American
Community Capital, LP. I'm not an affiliate of [International Star], I'm not in
any way, shape or form related to [International Star]. I'm just a passive
shareholder in the company. Several factors were considered in making its
[sic] the determination that Mr. Igwealor, the owner of the stockholder was not
an affiliate for purposes of Rule 405 . . . (1) Mr. Igwealor does not own 10% or
more of the company outstanding shares; (2) the stockholder was not an officer
or director; (3) he cannot designate a director; and (4) he does not have the
ability to influence company management or policy and there were no other
indicia of control over the company." (Emphasis added.)

90.     Igwealor's June 9, 2021 message to the broker-dealer was false because
he was an affiliate of International Star at that time.

91.    As a result of Igwealor's June 9, 2021 message, the broker-dealer lifted the trading restrictions on the American Community Capital account for a two-week period from June 22, 2021 to July 6, 2021.

92.    On July 14, 2021, Igwealor sent another message to the broker-dealer renewing his request to lift the trading restrictions, which it did on July 15, 2021.

93.    Contrary to Igwealor's statement that he was "not in any way, shape or form related to [International Star]" Igwealor's entity Alpharidge was, among other things, the court-appointed custodian of International Star.

94.    Contrary to Igwealor's statement that he "cannot designate a director," Igwealor appointed an associate as President, CEO, Treasurer, Secretary and Director of International Star.

95.    Igwealor knew, recklessly disregarded, or should have known, that his statements to his broker-dealer were false, and that, by providing this false information he circumvented the broker-dealer's internal controls, which would have prevented his sales of International Star stock.

## FIRST CLAIM FOR RELIEF

### Violations of Sections 5(a) and 5(c) of the Securities Act
### [15 U.S.C. §§ 77e(a) and 77e(c)]

### (Against Igwealor, Alpharidge and American Community Capital)

96.    The SEC realleges and incorporates by reference paragraphs 1 through 95 above.

97.    Defendants Igwealor, Alpharidge and American Community Capital, directly or indirectly: (i) made use of the means and instruments of transportation or communications in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise for which no exemption from registration has been available; and (ii) made use of the means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell

16

through the use or medium of a prospectus or otherwise, securities as to which no
registration statement had been filed.

98.    By engaging in the conduct described above, Defendants Igwealor,
Alpharidge and American Community Capital, and each of them, have violated and
are violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and
77e(c)].

## SECOND CLAIM FOR RELIEF

### Violation of Sections 17(a)(1) of the Securities Act

### [15 U.S.C. §(s) 77q(a)(1)]

### (Against Igwealor and GiveMePower)

99.    The SEC realleges and incorporates by reference paragraphs 1 through
98 above.

100.    Igwealor and GiveMePower, directly or indirectly, with scienter, in the
offer or sale of securities, by the use of the means or instruments of transportation or
communication in interstate commerce or by the use of the mails have employed, are
employing, or are about to employ devices, schemes or artifices to defraud.

101.    By reason of the foregoing, Igwealor and GiveMePower, and each of
them, have violated and are violating Section 17(a)(1) of the Securities Act [15
U.S.C. § 77q(a)(1)].

## THIRD CLAIM FOR RELIEF

### Violation of Section 17(a)(2) of the Securities Act

### [15 U.S.C. §(s) 77q(a)(2)]

### (Against Igwealor)

102.    The SEC realleges and incorporates by reference paragraphs 1 through
101 above.

103.    Igwealor, directly or indirectly, in the offer or sale of securities, by the
use of the means or instruments of transportation or communication in interstate
commerce or by the use of the mails: has obtained, is obtaining or is about to obtain

money or property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

104.    By reason of the foregoing, Igwealor has violated and is violating Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## FOURTH CLAIM FOR RELIEF

### Violation of Section 17(a)(3) of the Securities Act

### [15 U.S.C. §(s) 77q(a)(3)]

### (Against Igwealor, Ogbozor, and GiveMePower)

105.    The SEC realleges and incorporates by reference paragraphs 1 through 104 above.

106.    Igwealor, Ogbozor and GiveMePower, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, have engaged, are engaged, or are about to engage in transactions, acts, practices and courses of business that operated or would operate as a fraud upon purchasers of securities.

107.    By reason of reason of the foregoing, Igwealor, Ogbozor and GiveMePower, and each of them, have violated and are violating Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## FIFTH CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and

### Rules 10b-5(a) and (c) thereunder

### [15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a) and 10b-5 (c)]

### (Against Igwealor, Alpharidge, LA Community Capital, GiveMePower, Kid Castle, and Video River Networks)

108.    The SEC realleges and incorporates by reference paragraphs 1 through 107 above.

109.    Igwealor, Alpharidge, LA Community Capital, GiveMePower, Kid Castle, Video River Networks, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase and sale of securities:

have employed, are employing, and are about to employ devices, schemes, or artifices to defraud [Rule 10b-5(a)]; and

have engaged in acts, practices or courses of business which have operated, are operating and will operate as a fraud or deceit upon other persons, including purchasers and sellers of such securities; [Rule 10b-5(c)].

110.    By reason of the foregoing, Igwealor, Alpharidge, LA Community Capital, GiveMePower, Kid Castle, Video River Networks, and each of them, have violated and are violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5 [17 C.F.R. §§240.10b-5(a) and (c)].

## SIXTH CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5(b) thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)]**

**(Against Igwealor, GiveMePower, Kid Castle, and Video River Networks)**

111.    The SEC realleges and incorporates by reference paragraphs 1 through 110 above.

112.    Igwealor, GiveMePower, Kid Castle, Video River Networks, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase and sale of securities have made, are making and are about to make untrue statements of material fact, or have omitted, are omitting and are about to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading [Rule 10b-5(b)].

113.   By reason of the foregoing, Igwealor, GiveMePower, Kid Castle, Video River Networks, and each of them, have violated and are violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. §240.10b-5(b)].

### SEVENTH CLAIM FOR RELIEF

**Violations of Exchange Act**

**Section 13(a) and Rules 12b-20 and 13a-1 thereunder**

**[15 U.S.C. § 78m(a) and 17 C.F.R. § 240.12b-20 and 17 C.F.R. § 240.13a-1]**

**(Against GiveMePower, Kid Castle and Video River Networks)**

114.   The SEC realleges and incorporates by reference paragraphs 1 through 113 above.

115.   Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. §§ 240.13a-1] requires issuers of registered securities to file with the SEC factually accurate annual reports (on Form 10-K).

116.   Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

117.   By engaging in the foregoing conduct, Defendants GiveMePower, Kid Castle and Video River Networks, and each of them, have violated and are violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1].

## EIGHTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Exchange Act

### Section 13(a) and Rules 12b-20 and 13a-1 thereunder

### [15 U.S.C. § 78m(a) and 17 C.F.R. § 240.12b-20 and 17 C.F.R. § 240.13a-1]

### (Against Igwealor)

118.   The SEC realleges and incorporates by reference paragraphs 1 through 117 above.

119.   Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1] requires issuers of registered securities to file with the SEC factually accurate annual reports (on Form 10-K).

120.   Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

121.   By engaging in the foregoing conduct, Defendant Igwealor knowingly and recklessly provided substantial assistance to, and thereby aided and abetted Defendants GiveMePower's, Kid Castle's and Video River Networks' violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1].

## NINTH CLAIM FOR RELIEF

### Violations of Exchange Act

### Section 13(k) [15 U.S.C. § 78m(k)]

### (Against GiveMePower, Kid Castle and Video River Networks)

122.   The SEC realleges and incorporates by reference paragraphs 1 through 121 above.

123.   The Alpharidge Mortgage Note was a direct or indirect personal loan to Igwealor and Ogbozor from GiveMePower, Kid Castle and Video River Networks.

21

124.   Igwealor and Ogbozor directed the issuance of the Alpharidge Mortgage Note as evidenced by their having signed it, and knew that the transaction was for their personal benefit.

125.   By engaging in the conduct described above, GiveMePower, Kid Castle and Video River Networks, and each of them, have violated and are violating Section 13(k) of the Exchange Act, 15 U.S.C. § 78m(k).

## TENTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Exchange Act

### Section 13(k) [15 U.S.C. § 78m(k)]

### (Against Igwealor and Ogbozor)

126.   The SEC realleges and incorporates by reference paragraphs 1 through 125 above.

127.   The Alpharidge Mortgage Note was a direct or indirect personal loan to Igwealor and Ogbozor from GiveMePower, Kid Castle and Video River Networks.

128.   Igwealor and Ogbozor directed the issuance of the Alpharidge Mortgage Note as evidenced by their having signed it, and knew that the transaction was for their personal benefit.

129.   By engaging in the conduct described above, Defendant Igwealor knowingly and recklessly provided substantial assistance to, and thereby aided and abetted GiveMePower's, Kid Castle's and Video River Networks' violations of Section 13(k) of the Exchange Act, 15 U.S.C. § 78m(k).

130.   By engaging in the conduct described above, Defendant Ogbozor knowingly and recklessly provided substantial assistance to, and thereby aided and abetted GiveMePower's violations of Section 13(k) of the Exchange Act, 15 U.S.C. § 78m(k).

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

## I.

Enter a Final Judgment finding that Defendants committed the violations alleged in the Complaint;

## II.

In a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restrain and enjoin all Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with Defendants who receive actual notice of the order of this Court, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, to the extent each defendant violated or aided abetted the statutes and rules discussed above, in violation of Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)], 17(a) [15 U.S.C. §(s) 77q(a)] of the Securities Act and Sections 10(b) [15 U.S.C. § 78j(b)], 13(a) [15 U.S.C. § 78m(a)] and 13(k) [15 U.S.C. § 78m(k)] of the Exchange Act and Rules 10b-5, 12b-20 and 13a-1 thereunder [17 C.F.R. § 240.10b-5, 17 C.F.R. § 240.12b-20, and 17 C.F.R. § 240.13a-1];

## III.

Ordering Defendants Igwealor, Ogbozor, Alpharidge, American Community Capital, and LA Community Capital to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), 78u(d)(7)];

## IV.

Ordering Defendants Igwealor, Ogbozor, Alpharidge, American Community Capital, and GiveMePower to pay civil penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)]; and all Defendants to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

V.

Ordering that Igwealor and Ogbozor be permanently prohibited from serving as an officer or director of a public company, pursuant to Section 21(d)(2) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(d)(2)];

VI.

Ordering that Igwealor, Alpharidge and American Community Capital be permanently prohibited from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)] and Securities Act Section 20(g)(1) [15 U.S.C. § 77t)(g)(1); and

VII.

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

The Commission hereby requests a trial by jury.

Dated: November 18, 2024

/s/ Jasmine Starr

Jasmine Starr
Abigail Rosen (*pro hac vice pending*)
Thomas W. Peirce (*pro hac vice pending*)
Attorneys for Plaintiff
Securities and Exchange Commission

Of Counsel:
Antonia M. Apps
Tejal D. Shah
Michael D. Paley
SECURITIES AND EXCHANGE COMMISSION